IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:18-CR-00125-D

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| MICHAEL LEE DRAKE, | ) | |
| | ) | |
| Defendant. | ) | |

On March 30, 2021, Michael Lee Drake ("Drake" or "defendant") moved pro se for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2018) (codified as amended at 18 U.S.C. § 3582) [D.E. 42]. On May 13, 2021, Drake, through counsel, filed a memorandum in support [D.E. 51]. On May 27, 2021, the United States responded in opposition [D.E. 53]. On June 4, 2021, Drake replied [D.E. 54]. As explained below, the court denies Drake's motion.

I.

Drake was a high-volume drug dealer from 2009 until October 29, 2015. On June 18, 2018, pursuant to a written plea agreement, Drake pleaded guilty to conspiracy to distribute and possess with the intent to distribute 500 grams or more of cocaine and a quantity of cocaine base (crack). See [D.E. 1, 22, 23]. On November 21, 2018, the court held a sentencing hearing and adopted the facts set forth in the Presentence Investigation Report ("PSR") except for matters disputed in the parties objections to the PSR. See PSR [D.E. 33]; [D.E. 37]; Fed. R. Crim. P. 32(i)(3)(A)–(B). After ruling on the objections to the PSR, the court calculated Drake's offense level to be 32, his criminal history category to be III, and his advisory guideline range to be 151 to 188 months'

imprisonment. After granting the government's motion for a downward departure and thoroughly considering the arguments of counsel and all relevant factors under 18 U.S.C. § 3553(a), the court sentenced Drake to 120 months' imprisonment. See [D.E. 39] 1–2. Drake did not appeal.

On March 30, 2021, Drake moved for compassionate release. See [D.E. 42]. The government opposes the motion. See [D.E. 53].

On December 21, 2018, the First Step Act went into effect. See First Step Act, 132 Stat. at 5249. Before the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for compassionate release. Under the First Step Act, a sentencing court may modify a sentence of imprisonment either upon a motion of the Director of the BOP "or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

After a defendant meets the exhaustion requirement, a defendant must (1) demonstrate "extraordinary and compelling reasons" for a sentence reduction, or (2) be at least 70 years old, have served at least 30 years in prison, and have the Director of the BOP determine "that the defendant is not a danger to the safety of any other person or the community." Id. In deciding to reduce a sentence under section 3582(c)(1)(A), a court must consult the sentencing factors in 18 U.S.C. § 3553(a) and must ensure that a sentence reduction is "consistent with applicable policy statements issued by the" United States Sentencing Commission (the "Commission"). Id.

The Commission policy statements include U.S.S.G. § 1B1.13. Section 1B1.13 essentially parrots section 3582(c)(1)(A)'s requirements and adds that the defendant not be "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Section 1B1.13's application notes provide examples of extraordinary and compelling reasons, including: (A) serious

2

medical conditions of the defendant, (B) advanced age of the defendant when coupled with "a serious deterioration in physical and mental health" due to aging and having served at least 10 years or 75% of his or her imprisonment term (whichever is less), (C) family circumstances, or (D) another extraordinary and compelling reason. U.S.S.G. § 1B1.13 cmt. n.1.[1] Application note 2 states that

---

[1] Application note 1 to U.S.S.G. § 1B1.13 states in full:

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

   (A) Medical Condition of the Defendant.—

   (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

   (ii) The defendant is—

   (I) suffering from a serious physical or medical condition,

   (II) suffering from a serious functional or cognitive impairment, or

   (III) experiencing deteriorating physical or mental health because of the aging process,

   that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

   (B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

   (C) Family Circumstances.—

3

"an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment." U.S.S.G. § 1B1.13 cmt. n.2. Thus, "the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement." Id. Application note 3 states, "Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13 cmt. n.3.

The Commission has lacked a quorum since Congress enacted the First Step Act and has not updated U.S.S.G. § 1B1.13 to account for the First Step Act. Accordingly, section 1B1.13 does not provide a policy where an inmate files a motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). See, e.g., United States v. High, 997 F.3d 181, 186 (4th Cir. 2021); United States v. Kibble, 992 F.3d 326, 330–31 (4th Cir. 2021), cert. denied, No. 21-5624, 2021 WL 4733616 (U.S. Oct. 12, 2021); United States v. McCoy, 981 F.3d 271, 280–84 (4th Cir. 2020). Rather, "U.S.S.G. § 1B1.13 only applies when a request for compassionate release is made upon motion of the Director of the [BOP]." Kibble, 992 F.3d at 330–31 (cleaned up). Nevertheless, section 1B1.13 provides

---

(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1 (emphasis omitted).

informative policy when assessing an inmate's motion, but a court independently determines whether "extraordinary and compelling reasons" warrant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). See High, 997 F.3d at 186; McCoy, 981 F.3d at 283–84. In doing so, the court consults not only U.S.S.G. § 1B1.13, but also the text of 18 U.S.C. § 3582(c)(1)(A) and the section 3553(a) factors. See, e.g., McCoy, 981 F.3d at 280–84; United States v. Jones, 980 F.3d 1098, 1101–03 (6th Cir. 2020); United States v. Gunn, 980 F.3d 1178, 1180–81 (7th Cir. 2020); United States v. Ruffin, 978 F.3d 1000, 1007–09 (6th Cir. 2020); United States v. Brooker, 976 F.3d 228, 237–38 (2d Cir. 2020); United States v. Clark, No. 1:09cr336-1, 2020 WL 1874140, at *2 (M.D.N.C. Apr. 15, 2020) (unpublished).

Drake seeks compassionate release. See [D.E. 42, 51]. Drake unsuccessfully sought administrative relief before filing his motion for compassionate release. See [D.E. 42] 7–8; [D.E. 51] 4–5; [D.E. 51-1]. The government has not invoked section 3582's exhaustion requirement. See United States v. Muhammad, No. 20-7520, 2021 WL 4888393, at *3 (4th Cir. Oct. 20, 2021). Accordingly, the court assumes Drake exhausted his administrative remedies and addresses Drake's motion on the merits. See id.

Drake seeks compassionate release pursuant to section 3582(c)(1)(A). In support, Drake cites the COVID-19 pandemic, his health conditions (asthma, high blood pressure, lipomatous neoplasm, periapical abscess, umbilical hernia, and obesity), his age,[2] his rehabilitative efforts, his supportive family, and his release plan. See [D.E. 42, 51, 54]. The "medical condition of the defendant" policy statement requires that the defendant be "suffering from a serious physical or medical condition . .

---

[2] Because Drake is 55 years old, the "age of the defendant" policy statement does not apply. See U.S.S.G. § 1B1.13 cmt. n.1(B)(i). Thus, the court has considered Drake's age under the factors in 18 U.S.C. § 3553(a).

5

. that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). Drake argues that his health conditions place him at heightened risk of serious infection from COVID-19. See [D.E. 42] 14–15, 20–21; [D.E. 51] 11–16. However, Drake has already contracted and recovered from COVID-19, thus obtaining natural antibodies. See [D.E. 42] 16; [D.E. 51] 16–18; [D.E. 45].[3] And though Drake initially refused the COVID-19 vaccine, he is now fully vaccinated. See [D.E. 51] 18–20; [D.E. 53-1]; cf. United States v. Broadfield, 5 F.4th 801, 803 (7th Cir. 2021) ("[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release."); see also United States v. Baeza-Vargas, No. No. CR-10-00448-010-PHX-JAT, 2021 WL 1250349, at *3–4 (D. Ariz. Apr. 5, 2021) (collecting cases showing the "growing consensus" of district courts denying compassionate release when an inmate is vaccinated against COVID-19). Having natural antibodies and being fully vaccinated reduces Drake's risk of serious reinfection. Besides arguing he is unable to properly exercise due to lockdowns related to COVID-19, Drake makes no argument that he is unable to manage his health conditions while incarcerated. See [D.E. 51] 11–16. Accordingly, reducing Drake's sentence is inconsistent with application note 1(A). See 18 U.S.C. § 3582(c)(1)(A).

As for the "other reasons" policy statement, the court assumes without deciding that the COVID-19 pandemic and Drake's health conditions are extraordinary and compelling reasons under

---

[3] The court notes Drake's assertion that the BOP did not give him adequate medical care while he had COVID-19. See [D.E. 42] 16. However, Drake does not specify how the care was lacking, and it appears Drake has recovered, though he still "experienc[es] shortness of breath, chest pains, and overwhelming fatigue." [D.E. 42] 10.

6

section 3582(c)(1)(A).[4] Cf. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). At the same time, Drake having natural antibodies and being vaccinated diminishes the weight of that assumption. Cf. Broadfield, 5 F.4th at 803. Regardless, the section 3553(a) factors counsel against reducing Drake's sentence. See High, 997 F.3d at 187–91; Kibble, 992 F.3d at 331–32; United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020); Clark, 2020 WL 1874140, at *3–8.

Drake is 55 years old and is incarcerated for conspiracy to distribute and possess with the intent to distribute 500 grams or more of cocaine and a quantity of cocaine base (crack). See PSR ¶¶ 1–6. From 2009 to October 29, 2015, Drake was responsible for distributing 129.19 kilograms of crack cocaine, 50.77 kilograms of cocaine, and 6.8 kilograms of marijuana. See id. ¶¶ 10–16; [D.E. 51] 21. Drake possessed firearms in connection with his drug trafficking. See PSR ¶¶ 10–16. Drake also directed at least four people in furtherance of his drug trafficking activities. See id. Drake is a violent recidivist with convictions for illegally carrying a concealed weapon (two counts), maintaining a vehicle, dwelling, or place for controlled substances, use of a firearm during and in

---

[4] The court notes Drake's argument that the specific conditions at FCI Ashland constituted an extraordinary and compelling reason for release because they placed Drake at a high risk of contracting COVID-19. See [D.E. 42] 10–14; [D.E. 51] 9–11. The court is aware that at one point FCI Ashland had a serious COVID-19 outbreak that now appears to be under control. See, e.g., United States v. Hamilton, No. 1:19-cr-00044-TWP-DLP, 2021 WL 2401917, at *2, 4 (S.D. Ind. June 11, 2021) (unpublished). However, Drake is now housed at FCI Beckley. See BOP Inmate Locator, https://www.bop.gov/inmateloc// (search by inmate number) (last visited Oct. 26, 2021). And the BOP has undertaken significant efforts across the country to prevent the spread of COVID-19. See [D.E. 53] 3–5; cf. Hallinan v. Scarantino, 466 F. Supp. 3d 587, 605 (E.D.N.C. 2020). FCI Beckley currently has only one inmate and one staff member who have tested positive for COVID-19. See https://www.bop.gov/coronavirus (last visited Oct. 26, 2021).

7

relation to a drug trafficking offense, possession with intent to distribute cocaine base (crack), and assault on a female. See id. ¶¶ 21–26. Drake has not performed well on federal supervision in the past. See id. ¶ 24. In fact, Drake began participating in the drug-trafficking conspiracy for which is he currently incarcerated while he was on federal supervision. See id. ¶¶ 16, 24; [D.E. 53] 20–21. Although Drake's likelihood of further recidivism is lower due to his age, Drake was also a leader in a high-volume drug distribution conspiracy at an age inconsistent with the relevant recidivism statistics.

Drake has been productive while incarcerated. He has taken vocational and education courses, including a course to obtain his commercial driver's license. He is enrolled in more courses that are currently on hold due to COVID-19. See [D.E. 51] 22; [D.E. 51-3]. Drake has also worked on the landscaping crew. See [D.E. 51] 22; [D.E. 51-3]. And Drake has successfully paid off his special assessment balance through the Financial Responsibility Program. See [D.E. 51] 21–22.

The court must balance Drake's positive rehabilitative efforts with the extraordinary seriousness of his high-volume, armed drug trafficking that began while on federal supervised release. The court has also considered Drake's potential exposure to COVID-19, medical conditions, age, and release plan. Cf. Pepper v. United States, 562 U.S. 476, 480–81 (2011); High, 997 F.3d at 187–91; United States v. McDonald, 986 F.3d 402, 412 (4th Cir. 2021); United States v. Martin, 916 F.3d 389, 398 (4th Cir. 2019). The court recognizes Drake has a supportive family who would help him if released. See [D.E. 54-1]. Having considered the entire record, the steps that the BOP has taken to address COVID-19 and to treat Drake, the section 3553(a) factors, Drake's arguments, the government's persuasive response, and the need to punish Drake for his serious and prolonged criminal behavior, to incapacitate Drake, to promote respect for the law, to deter others, and to protect society, the court denies Drake's motion for compassionate release. See, e.g., Chavez-Meza

8

Case 5:18-cr-00125-D Document 58 Filed 10/26/21 Page 8 of 9

v. United States, 138 S. Ct. 1959, 1966–68 (2018); Ruffin, 978 F.3d at 1008–09; Chambliss, 948 F.3d at 693–94; United States v. Hill, No. 4:13-CR-28-BR, 2020 WL 205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished), aff'd, 809 F. App'x 161 (4th Cir. 2020) (per curiam) (unpublished).

As for Drake's request for home confinement, see [D.E. 42] 24–25, 28; [D.E. 51] 24–25, Drake seeks relief under the CARES Act. The CARES Act does not provide this court with the authority to grant home confinement. See United States v. Brummett, No. 20-5626, 2020 WL 5525871, at *2 (6th Cir. Aug. 19, 2020) (unpublished) ("[T]he authority to grant home confinement remains solely with the Attorney General and the BOP."); United States v. McCoy, No. 3:19-CR-35-KDB-DCK, 2020 WL 5535020, at *1–2 (W.D.N.C. Sept. 15, 2020) (unpublished); United States v. Gray, No. 4:12-CR-54-FL-1, 2020 WL 1943476, at *3 (E.D.N.C. Apr. 22, 2020) (unpublished). To the extent Drake requests that the court merely recommend home confinement to the BOP, the court declines. Thus, the court dismisses Drake's request for home confinement.

II.

In sum, the court DENIES defendant's motion for compassionate release [D.E. 42], DISMISSES defendant's request for home confinement, and DENIES as moot defendant's motion for appointed counsel [D.E. 57].

SO ORDERED. This 26 day of October, 2021.

 Dever
JAMES C. DEVER III
United States District Judge